1  SHIRLEY C. WANG (SBN 187635)
   swang@daviswanglaw.com
2  DAVIS WANG
   625 Market Street, 12th Floor
3  San Francisco, California 94105
   Telephone:  (415) 278-1400
4  Facsimile:   (415) 278-1401

5  Attorneys for Defendant
   TENDERLOIN HOUSING CLINIC, INC.
6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| SHARON FENNIX, individually, and on behalf of all others similarly situation,<br><br>Plaintiff<br><br>v.<br><br>TENDERLOIN HOUSING CLINIC, INC., a California corporation; and DOES 1 through 10, inclusive<br><br>Defendants. | Case No.:<br><br>[*Removed from San Francisco Superior Court, Case No. CGC-20-584834*]<br><br>**DEFENDANT TENDERLOIN HOUSING CLINIC, INC'S NOTICE OF REMOVAL OF CIVIL ACTION TO U.S. DISTRICT COURT**<br><br>[*Filed concurrently with:*<br>*1. Civil Case Cover Sheet;*<br>*2. Corporate Disclosure Statement and Certificate of Interested Persons or Entities;*<br>*3. Declaration of Jaime Quijano; and*<br>*4. Declaration of Shirley Wang*<br><br>Complaint Filed: June 9, 2020<br>Removal Date:    July 29, 2020 |

1
DEFENDANT'S NOTICE OF REMOVAL

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF SHARON FENNIX AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Tenderloin Housing Clinic, Inc. ("THC"), hereby removes the matter of *Sharon Fennix v. Tenderloin Housing Clinic, Inc.* pending in the Superior Court of the State of California in and for the County of San Francisco, Case No. CGC-20-584834, to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446.

Removal is proper because this is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, as it is an action arising under federal law. Specifically, as set forth in more detail below, this action is preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 *et seq.*, because it is based on rights created by and requires interpretation of a collective bargaining agreement, which governs the terms and conditions of Plaintiff's employment. Therefore, this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). The following is a short and plain statement of the grounds for removal pursuant to 28 U.S.C. § 1446(a).

## I.  PROCEDURAL BACKGROUND

1. On January 9, 2020, Plaintiff Sharon Fennix ("Plaintiff"), individually and on behalf of all persons similarly situated, filed a complaint in the Superior Court of California, County of San Francisco, Case No. CGC-20-584834 ("the Complaint"). The Summons and Complaint, and all other materials served on THC in this matter, and all documents on the docket in the state court action, are attached as Exhibit 1 to the Declaration of Shirley Wang in Support of Defendant Tenderloin Housing Clinic, Inc.'s Notice of Removal of Civil Action to U.S. District Court ("Wang Decl.")

2. In the Complaint Plaintiff asserts the following causes of action: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime compensation; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to indemnify necessary business expenses; (6) failure to timely pay final wages at termination; (7) failure to provide accurate itemized wage statements; and (8) unfair business practices. Wang Decl., Ex. 1, Complaint.

3. Plaintiff's Complaint implicates federal law because the terms and conditions of Plaintiff's employment were subject to a Collective Bargaining Agreement between THC and the Service Employees International Union, CTW Local 1021 effective from July 1, 2017 through June 30, 2020 (the "CBA"). A true and correct copy of the CBA is attached as Exhibit 1 to the Declaration of Jaime Quijano in Support of Defendant Tenderloin Housing Clinic, Inc.'s Notice of Removal of Civil Action to U.S. District Court ("Quijano Decl.")

4. Plaintiff worked for THC from on or about October 3, 2018 until on or about September 30, 2019. Quijano Decl. ¶ 3. The CBA was in effect for this entire period of time. *Id.*, Ex. 1. Thus, the terms and conditions of Plaintiff's employment were at all relevant times subject to the CBA between TCH and Service Employees International Union, CTW Local 1021. *Id.*

5. The Union is a labor organization within the meaning of Section 2(5) of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

6. THC is an employer within the meaning of the LMRA, 29 U.S.C. § 152(2).

7. Article 1 of the CBA specifically states that the Union is the Exclusive bargaining representative for the covered employees. Quijano Decl., Ex. 1, Article 1.

## II.  TIMELINESS OF REMOVAL

8. On June 29, 2020, THC was served with the Summons, Complaint, Civil Cover Sheet, Application for Complex Designation, Notice of Case Management Conference and ADR Information Package. Wang Decl. ¶ 2, Ex. 1.

9. To THC's knowledge, the Summons, Complaint, Civil Cover Sheet, Application for Complex Designation, Notice of Case Management Conference, ADR Information Package, and Proof of Service attached as Exhibit 1 to the Wang Declaration constitute all of the state court pleadings filed in the state court action to date.

10. Defendants "DOES 1 to 10, inclusive" have not been identified, nor is there any record of service of any documents associated with the State Court Action on the Doe Defendants.

11. This removal is timely filed as required by 28 U.S.C. § 1446(b), having been accomplished within 30 days of the date of first service of the state court action on THC, which occurred on June 29, 2020.

## III. FEDERAL QUESTION JURISDICTION BASED ON THE LABOR MANAGEMENT RELATIONS ACT

12. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. §1331, and is one which may be removed to this Court by THC pursuant to the provisions of 28 U.S.C. §1441, in that the relief sought in the Complaint arises under and is preempted by Section 301 of the LMRA. 29 U.S.C. § 185. The LMRA grants federal district courts subject matter jurisdiction over claims involving the interpretation of "contracts between an employer and a labor organization." 29U.S.C. § 185(a); *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective bargaining agreement," the claim is preempted, even if based on state law) (emphasis added). "The preemptive force of Section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement." *Young v. Anthony Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). As set forth below, the LMRA confers federal subject matter jurisdiction over this action because Plaintiff's claims arise from the CBA between THC and Plaintiff's union, and the resolution of those claims requires interpretation of the CBA. The CBA sets forth policies regarding the payment of overtime and overtime hourly rates, the provision of meal and rest periods, the reimbursement of business expenses, the timing of the payment of wages, wage rates, a mandatory grievance procedure and arbitration clause, and other terms and conditions of the Plaintiff's and Class Members' employment with THC. Plaintiff's claims place the terms of the CBA squarely at issue and are, therefore, preempted by the LMRA.

### A. The LMRA Preempts Claims That Either (1) Arise From a Labor Agreement, or (2) Require Substantial Interpretation of a Labor Agreement.

13. The Ninth Circuit has clarified that the LMRA preempts claims in two respects. First, if the claim involves a right that exists because of the CBA rather than state law, the "claim is preempted and [the court's] analysis ends there." *Burnside*, 491 F.3d at 1059. Second, if the claim requires the Court to interpret a CBA or is "substantially dependent on analysis of a collective-bargaining agreement," the claim is preempted, even if based on state law. *Id*.

14. Although the language of LMRA Section 301 is limited to "suits for violation of contracts," it has been construed quite broadly to cover state-law actions that do not allege a breach of the CBA, but nonetheless require interpretation of labor agreements. *Allis Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as preempted by federal labor-contract law.") (internal citations omitted) (emphasis added); *see also Paige v. Henry J. Kaiser Co.*, 826 F.2d 857, 861 (9th Cir. 2001) (when resolution of a claim brought under state law is "substantially dependent on analysis" of a collective-bargaining agreement, the claim is preempted by Section 301) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987)); *Hyles v. Mensing*, 849 F.2d 1213, 1215-1216 (9th Cir. 1988); *Young*, 830 F.2d at 997, 999; *Raphael v. Tesoro Refining & Marketing Co.*, LLC, No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, *6-7 (C.D. Cal. June 30, 2015) ("To further the goal of uniform interpretation of labor contracts, the preemptive effect of § 301 has been extended beyond suits that allege the violation of a collective bargaining agreement... [a] state law claim will be preempted if it is so 'inextricably intertwined' with the terms of a labor contract that its resolution will require judicial interpion of those terms.") (*citing Allis Chalmers Corp*. 471 U.S. at 210-11) (emphasis added).

### 1. Plaintiff's Claims Are Based Upon – And Arise From – the CBA, and Therefore are Preempted Under the First *Burnside* Prong.

15. The Service Employees International Union, CTW Local 1021, represents THC's employees (the "Union"). Quijano Decl. ¶ 3, Ex. 1, Article 1. Plaintiff was, at all relevant times, a THC employee – a Case Manager - represented by the Union, and the terms and conditions of her employment were governed by the CBA between THC and the Union. *Id*.

16. As set forth below, the CBA between THC and the Union specifically addresses, *inter alia*, (1) the employees' rates of pay, the payment of overtime, and the overtime rates, (2) the employees' entitlement to take meal and rest periods, the manner in which the meal and rest periods are authorized and permitted, (3) the timing of THC's payment of wages to employees, and (4) THC's reimbursement of employee expenses. The CBA also includes a grievance and binding arbitration procedure which is the exclusive forum for resolution of the claims Plaintiff alleged in the Complaint.

17. The CBA includes the following provisions, in relevant part, regarding wages, hours, the hourly overtime rate, meal breaks, and the payment of wages:

**ARTICLE 13. OVERTIME/COMPENSATORY TIME**

Each position with THC will be classified as non-exempt or exempt and this designation will be made clear to Employees at the time of hiring.

Section 1.     Non-Exempt Employees

All Employees covered by this CBA who are employed in a non-exempt capacity (as defined in the requirements of the Federal Fair Labor Standards Act and the California Labor Code) will be paid overtime at the rate of one and one-half (1-1/2) times the Employee's regular rate of pay for all hours worked in excess of thirty seven and a half (37.5) hours in one week (workweek is defined as Sunday through Saturday) and for the first four and a half hours (4.5) in excess of seven and a half (7.5) in a single work day. Any hours in excess of the times indicated, will be paid in accordance with California's Overtime Law (FLSA).

Employees must receive advanced approval from their direct supervisor or the department director prior to any overtime. See Article 5, Section 1 and 2 of the CBA for definition of workweek and workday.

  A. Overtime at two (2) times the regular wage is paid for all hours worked in excess of twelve (12) in one workday.

  B. Part-time Employees shall not be required to work beyond their normal weekly schedule and there shall be no threat of negative consequences from their supervisor for not accepting additional hours.

  C. Employees must have prior approval from their immediate supervisor before working any overtime.

. . . .

**APPENDIX A THC Bargaining Unit Classification and Rate of Pay Sheet**

| Job Title | Starting Hourly Pay Rate | Annualized Rate @ 1950 hours per year |
|---|---|---|
| Case Manager – Master Lease | $20.1751 | $39,341.43 |
| Case Manager – Shelter + Care + VASH | $21.2133 | $41,365.93 |

. . . .

**ARTICLE 7. WORK SCHEDULE**

Section 1. Workweek

The workweek is from 12:01 AM Sunday to 12:00 AM Midnight Saturday

Section 2. Workday

The universal workday is a 24-hour period beginning at 12:01 AM and ending at 12:00 AM midnight each calendar day. The normal workday shift is a seven and a half (7.5) hour period with a forty (40) minute meal break.

. . . .

Section 5.  Breaks

. . . . Meal breaks are forty (40) minutes. Thirty (30) minutes is unpaid and ten (10) minutes is paid of the forty (40) minute meal break.

Coverage:

> i. For Employees who work in a "public customer service position" (i.e. Desk Clerks and Administrative Staff) and cannot abandon their post, if two (2) Employees are scheduled to work a shift, one covers the desk while the other takes their meal and rest periods. If only one (1) person is scheduled for the front desk, but a peer staff (janitor, maintenance, associate) is on duty, the peer staff is responsible for covering the front desk while the Employee is on their meal break or rest period.

> ii. If only one (1) person is scheduled for the "public customer service position" and no peer staff is on duty, but a manager is, the manager is responsible for identifying the person to cover the desk while the Employee is on their meal break or rest period.

Section 6.  Payday

All Employees will be paid bi-weekly (every other Friday). If the payday falls on an observed Holiday, paychecks will be issued on the previous business day. The Employer will make every effort to issue all checks no later than 12:00pm. If payment is delayed past 12:00pm members will be allowed a thirty (30) minute paid release time to go to their bank. All check stubs will exhibit up to date accrued vacation and sick hours.

Section 7. Alternative Work Schedules

The parties agree, subject to California State Law, to consider alternative work schedules that improve effectiveness of the workforce and the delivery of service.

Quijano Decl., Ex. 1.

18.   The grievance and binding arbitration provision of the CBA provides:

**ARTICLE 6. GRIEVANCE PROCEDURE**

Section 1. Discipline And Contract Interpretation

In the event a dispute arises with reference to the interpretation or enforcement of this CBA, the following procedure shall be followed, provided that the matter be presented to grievance within five (5) business days for discipline and ten (10) business days for issues involving interpretation or application of this CBA, otherwise the right of grievance is lost. The purpose of the procedure set forth below is to provide the Employer, the Employees, and the Union an orderly means of resolving disputes, which may arise between them. NOTE: Special Expedited Procedure Applies to Terminations.

Section 2. Grievance Defined

A grievance is a claim by an Employee or the Union concerning the interpretation or application of this CBA. The written, formal grievance shall contain a clear, brief statement of the issue, the date of the violation, the section(s) of the CBA allegedly violated, the proposed remedy, and shall be signed by the aggrieved party. The aggrieved party shall have the right to representation by a Shop Steward and/or Union Field Representative at each step of the grievance procedure.

Examples of Grievable and Non-Grievable Issues:
Grievable:
- Terminations after 90 day probationary period
- Demotions or salary reductions
- Suspensions without pay
- Violations of state, federal or local law, including violations of health and safety codes
- Breach of terms of the contract

Non-grievable
- Terminations during 90 day probationary period
- Disciplinary actions other than those cited above (e.g. written or verbal warnings not resulting in a consequence).
  - If, however, a written or verbal warning is subsequently introduced in a disciplinary action "with consequences" any and all written or verbal warnings in the personnel file shall be subject to the grievance procedure.
  - Written warnings must be completed on a form that permits the Employee to sign the document with the condition "I acknowledge receipt of this written warning but do not necessarily agree with the facts or the discipline."
  - Employees shall be given a copy of all disciplinary warnings
  - Employees may attach a rebuttal to any warning, which will beincluded in the personnel file. Failure to offer a rebuttal does not waive any legal rights.
- Voluntary resignations, including Employees who do not show up for work and do not follow the proper call in procedures for three consecutive days ("no call, no show")

Section 3. Procedure

When an Employee has a problem they inform their supervisor, with or without the assistance of a Shop Steward and/or Union Field Representative, and attempts to resolve the problem informally by discussing the issue.

Step 1. If there has been no informal resolution of the dispute by the Employee and the Employee's supervisor, the next step to address the grievance is for the Employee to submit a written statement of the grievance to the Human Resources Director. It is the Human Resources Director's responsibility to supply a copy of the grievance to the Department Director or Designee; to respond in writing within ten (10) business days after receipt to the Union and Employee who filed the grievance.

Step 2. If the grievance is not satisfactorily resolved or if no answer is given within the time specified in Step 1, the Union Shop Steward or the Employee who filed the grievance may contact the Deputy Director or their designee in writing to request a meeting to hear the grievance within five (5) business after the start of the Step 2 process. The Deputy Director or their designee shall reply to the grievance within ten (10) business days following such meeting.

Step 3. If the grievance is not satisfactorily resolved in Step 2, or if no answer is given within the time specified in Step 2, the Union may, by written notice to the Executive Director within five (5) business days for discipline or discharge and in ten (10) business days for issues involving interpretation or application of the CBA after the Step 2 response, or on the last day which the answer was due if none was given, requests that the grievance be heard by the Executive Director or his/her designee within five (5) business days after receipt of the notice. The Employer shall reply to the grievance within ten (10) business days after the Step 3 grievance meeting.

Step 4. If, within ten (10) business days following the Step 3 grievance meeting the grievance is not satisfactorily resolved, or if no answer is given within the time specified, the Union may request for final and binding arbitration. The parties will attempt to agree upon an impartial arbitrator. In the event the parties are unable to agree upon an impartial arbitrator, then either party may request a panel of seven (7) arbitrators from the Federal Mediation and Conciliation Service (FMCS) within fifteen (15) business days of the notice requesting arbitration to select an arbitrator to hear and resolve the grievance. The parties shall flip a coin to determine which party will strike first name from the panel, and then shall proceed. The arbitrator selected shall hear the grievance as soon as possible.

The Parties may agree to utilize FMCS for mediation prior to, or as an alternative to, arbitration.

The expenses of the arbitration shall be shared by the parties. Each party shall bear the cost of its own representatives and witnesses. The arbitrator selected shall not have the authority or jurisdiction to add to, subtract from, change, alter or modify any of the terms of this contract. The decision of the Arbitrator shall be final and binding upon the parties.

The time limits listed in the grievance procedure may be extended by mutual written agreement between the parties.

<u>Section 4. Expedited Arbitration</u>

By mutual agreement the Union and the Employer may agree to utilize the following expedited arbitration procedure. The arbitrator shall be selected in the regular manner or may be a mediator from the FMCS
sitting as an arbitrator.
    1) All efforts shall be made prior to the hearing to stipulate to the facts and the evidence to the record;
    2) No attorneys shall be used. However the parties shall have the right to other representation;
    3) There shall be no stenographic record of the proceedings;
    4) Only oral closing arguments shall be used; no briefs will be permitted to be filed;
    5) Only a bench decision shall be required. The arbitrator may write a one page decision if mutually requested by the parties.

Quijano Decl., Ex. 1.

19. <u>Plaintiff's Overtime Claim</u>. Plaintiff s overtime claim is preempted under the statutory overtime laws. "Section 514 of the Cal. Labor Code states that the statutory overtime provisions of § 510 do not apply to an employee who is covered by a valid CBA which expressly provides for the (1)

wages, (2) hours of work, (3) working conditions, (4) premium wage rates for all overtime hours, and (5) regular hourly wage, not less than 30% greater than the state minimum wage. Cal. Labor Code § 514." *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 218CV03054ODWASX, 2018 WL 3218102, at *2 (C.D. Cal. June 28, 2018) (dismissing with prejudice plaintiff's claim that plaintiff worked in excess of eight hours per day and forty hours per week without receiving overtime pursuant to Labor Code § 510 because the requirements of Labor Code § 514 were met); *accord Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 107 (2014); *Curtis v. Irwin Indus.*, 913 F.3d 1146, 1153-54 (9th Cir. 2019).

20. In the instant case, each of the requirements of Labor Code § 514 have been satisfied. It is undisputed that Plaintiff was a non-exempt employee. Plaintiff's employment with THC was covered by the CBA, which expressly provides for the employees' (1) wages, (2) hours of work, (3) working conditions, and for (4) premium wage rates for all overtime hours. *See* Quijano Decl. ¶ 3, Ex. 1, Articles 7-24, Appendix A. Additionally, pursuant to the CBA, Plaintiff was paid an hourly rate that was more than 30% greater than the state minimum wage of $11.00 and $12.00 per hour that was in effect during Plaintiff's employment with THC. *Id.*, Ex. 1, Appendix A. When, as in the instant case, the applicable CBA meets the requirements of Labor Code § 514, the right to overtime exists solely as a result of the CBA and LMRA preemption applies. Accordingly, because the CBA meets the requirements of Labor Code § 514, Plaintiff's overtime claim is preempted by the LMRA.

21. <u>Plaintiff's Untimely Payment of Wages Claim</u>. Plaintiff's untimely payment of wages claim pursuant to Labor Code § 204 is also preempted. Labor Code § 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees," rather than the provisions of subsections (a) and (b). Labor Code § 204; *see also Bradford v. Prof'l Tech. Sec. Servs. Inc. (Protech),* No. 20-CV-02242-WHO, 2020 WL 2747767, at *4 (N.D. Cal. May 27, 2020); *Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019). Thus, the language of § 204(c) makes clear that employers need not comply with Labor Code § 204's timing requirements if a collective bargaining agreement creates a different payment arrangement, as is the case here. The CBA expressly sets forth payment arrangements in Article 7, Section 6, addressing the timing of wage

payments, which differ from the requirements of § 204.1.  Quijano Decl., Ex. 1, Article 7, Section 6. The CBA provides for the biweekly payment of wages (Quijano Decl, Ex. 1, Article 7, Section 6), whereas Labor Code § 204 provides for the semimonthly payment of wages.  The CBA provides for different payment arrangements – people paid on a biweekly basis are paid 26 times per year, whereas people who are paid semimonthly are paid 24 times per year.  Moreover, the CBA sets forth additional requirements regarding the payment of wages not found in Labor Code § 204.  *See* Quijano Decl., Ex. 1, Article 7, Section 6.

22. Because Article 7, Section 6 of the CBA provides for different arrangements for the timing and frequency of wage payments, which themselves must be interpreted and analyzed, Plaintiff's claim for violation of Labor Code § 204 is wholly preempted by Section 301 of the LMRA.

23. <u>Plaintiff's Meal Period Claim</u>.  Labor Code § 512(e) provides for exemption from the meal period requirements of Labor Code Section 512(a) when both of the following conditions are satisfied: (1) the employee is covered by a valid collective bargaining agreement; (2) the valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.  When the Labor Code Section 512(e) exemption applies, a meal period claim pursuant to Labor Code Section 512(a) is statutorily barred.  *Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679, 680 (9th Cir. 2020); *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal. App. 4th 227, 236-38 (2014).  As a result, the meal period claim exists only pursuant to the CBA and is therefore preempted by the LMRA under the first prong of the *Burnside* test.  *Marquez*, 804 F. App'x at 680; *Araquistain*, 229 Cal. App. 4th at 236-38.

24. In holding that the Labor Code Section 512(e) exemption applied, the court in *Araquistain* reasoned that "[i]t appears to us that when employees, represented by a labor union, 'have sought and received alternative wage protections through the collective bargaining process, they are free to bargain over the terms of their meal period, including whether the meal period will be of a

specified length and whether employees will be relieved of all duty during that time." *Araquistain*, 229 Cal. App. 4th at 236-38 (internal quotations, citations omitted).

25. Regarding meal periods, in the instant case the CBA provides for a normal work day shift of 7.5 hours with a 40 minute meal break, 30 minutes of which is unpaid while 10 minutes is paid. Quijano Decl., Ex. 1, Article 7, Sections 2, 5. The CBA does not provide when the meal break should be taken. *Id*., Article 7, Section 5.

26. In the instant case, the CBA provides for a more generous meal break than that required under Labor Code § 512(a) given that it provides employees with a 40 meal minute break as opposed to the 30 minute meal break required under Labor Code § 512(a), and that 10 minutes are paid whereas the meal break required under Labor Code § 512(a) is unpaid. Like in *Araquistain*, in the instant case employees, represented by a labor union, sought and received alternative wage protections through the collective bargaining process, and should be free to bargain over the terms of their meal period. Thus, although Plaintiff does not fall within any of the employee categories setout in Labor Code § 512(f), the CBA should be enforced and Plaintiff's Labor Code § 512 meal period claim should be preempted under the first prong of *Burnside*.

27. In sum, Plaintiff's state law claims for unpaid overtime under Labor Code § 510, for untimely payment of wages under Labor Code § 204, and for failure to provide compliant meal periods and/or premium pay under Labor Code § 512 are preempted by Section 301 under the first prong of *Burnside*, and this matter is properly removable pursuant to 28 U.S.C. § 1441. *See Coria v. Recology, Inc*., 63 F. Supp.3d 1093, 1099 (N.D. Cal. 2014) (holding that plaintiffs meal period and overtime claims arise under the CBA and are preempted by the LMRA because the Labor Code Sections 512(e) and 514 exemptions were met); *Mireles v. Paragon Sys*., Civ. No. 13-cv-122 L (BGS), 2014 WL 4385453, at *6 (S.D. Cal. Sept. 4, 2014) (finding LMRA preemption after determining Labor Code §§ 512(e) and 514 exemptions were met); *Bradford,* No. 20-CV-02242-WHO, 2020 WL 2747767, at *4.

**2. Plaintiff's Claims are Preempted Under the Second *Burnside* Prong Because they Require Interpretation of the CBA.**

28.     Under the second *Burnside* prong, Plaintiff's claims are preempted by the LMRA because they require interpretation of the CBA provisions regarding THC's authorization of meal and rest breaks and expense reimbursement.  Plaintiff's claims place the terms of these CBAs squarely at issue.  As demonstrated below, resolving the parties' disputes is "substantially dependent" on the interpretation of the CBA.  *Burnside*, 491 F.3d at 1059-60; *Rafael v. Tesoro Refining and Marketing Company LLC*, Civ. No. 15-02862-ODW(Ex), 2015 U.S. Dist. LEXIS 85191 at *16-17 (C.D. Cal. June 30, 2015) (finding LMRA preemption because the Court would need to interpret CBAs to determine whether the Labor Code 512(e) and 514 exemptions apply); *Firestone v. Southern Calif Gas Co.*, 219 F.3d 1063, 1066 (9th Cir. 2000).

29.     Plaintiff's Meal and Rest Period Claims.  Plaintiff's meal and rest period claims are preempted under the second *Burnside* prong.  Plaintiff alleges that THC wrongfuly failed to provide Plaintiff and the Class with legally compliant meal periods.  Wang Decl., Ex. 1, Complaint ¶ 16.  THC regularly required Plaintiff and the Class to work in excess of five consecutive hours a day without providing a 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff and the Class for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work.  *Id*.  THC did not adequately inform Plaintiff and the Class of their right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work.  *Id*.  Moreover, THC did not have adequate written policies or practices providing meal periods for Plaintiff and the Class, nor did THC have have adequate written policies or practices regarding the timing of meal periods.  *Id*.

30.     Plaintiff also alleges that THC wrongfully failed to authorize and permit Plaintiff and the Class to take timely and duty-free rest periods.  Wang Decl., Ex. 1, Complaint ¶ 17.  THC regularly required Plaintiff and the Class to work in excess of four consecutive hours a day without THC authorizing and permitting them to take a 10-minute, continuous and uninterrupted rest period for every four hours of work, or major fraction thereof, or without compensating Plaintiff and the Class for rest periods that were not authorized or permitted.  *Id*.  Indeed, THC required Plaintiff and the Class to work

1  in lieu of taking 10-minute, paid, duty-free rest periods because there was too much work to do. *Id*.

2  THC also did not adequately inform Plaintiff and the Class of their right to take a rest period. *Id*. THC

3  did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff and the

4  Class, nor did THC have adequate policies or practices regarding the timing of rest periods. *Id*. THC

5  also did not have adequate policies or practices to verify whether Plaintiff and the Class were taking

6  their required rest periods. *Id*. THC did not maintain accurate records of employee work periods, and

7  therefore THC cannot demonstrate that Plaintiff and the Class took rest periods during the middle of

8  each work period. *Id*.

9        31.      In *Marquez*, the court found that the plaintiff's meal and rest break claims failed under

10  the second *Burnside* prong because they required interpretation of the CBA. *Marquez v. Toll Glob.*

11  *Forwarding (USA) Inc.*, No. 218CV03054ODWASX, 2018 WL 3218102, at *3 (C.D. Cal. June 28,

12  2018), *aff'd sub nom. Marquez v. Toll Glob. Forwarding*, 804 F. App'x 679 (9th Cir. 2020) (affirming

13  preemption of rest break claim under second *Burnside* prong and finding preemption of meal break

14  claim under first *Burnside* prong without reaching second *Burnside* prong). The court reasoned:

> The meal and rest break provision of the CBA 'permits' employees to take 'any and all meal and rest periods that the Employee is entitled to by law.' As Defendants point out, the CBA does not obligate the employer to provide breaks, and it is not entirely clear what it means to "permit" an employee to take a break. Furthermore, Plaintiff alleges Defendants scheduled employees in a way that failed to reasonably ensure they could take meal breaks, and failed to implement a relief system so that they could take rest breaks. Therefore, adjudication of these claims will require analysis of Defendants' scheduling policies, combined with analysis of what it means under the CBA to 'permit' an employee to take a break. Namely the question will hinge on how exactly defendants' policies prevented employees from taking the breaks they were permitted . . . .

21  *Marquez*, No. 218CV03054ODWASX, 2018 WL 3218102, at *3 (internal citations omitted).

22        32.      Similarly, in the instant case, the meal and rest period provision of the CBA "permits"

23  employees to take meal and rest periods. *See* Quijano Decl., Ex. 1, Article 7, Section 5. Like in

24  *Marquez*, it is not entirely clear what the term "permit" means. The Court will be required to interpret

25  the meaning of the term "permit" in the CBA. Additionally, the CBA includes provisions regarding the

26  timing and/or duration of meal and rest periods that the Court will be required to interpret. *Id.*, Ex. 1

27  Article 7, Sections 2, 5. Analysis of whether or not Plaintiff and other Class Members worked in a

28  "public customer service position" under the CBA and the impact of the rules on whether or not they

were provided with lawful meal and rest breaks will be necessary. *Id*., Ex. 1 Article 7, Section 5. Accordingly, Plaintiff's meal and rest period claims are preempted under the second *Burnside* prong.

33. <u>Plaintiff's Expense Reimbursement Claim.</u>  Plaintiff alleges that THC required Plaintiff and the Class to pay expenses that they incurred in direct discharge of their duties for THC without reimbursement.  Wang Decl., Ex. 1, Complaint ¶ 18.  This included use of their own vehicles, which mileage and any other related expenses were not reimbursed.  *Id*.  Plaintiff and the Class incurred these substantial expenses as a direct result of performing their job duties for THC, and THC has failed to indemnify Plaintiff and the Class for these employment-related expenses.  *Id*.

34. The CBA provides the following regarding the reimbursement of business expenses:

> In the event an Employee is required, due to staffing needs, to work at a facility other than their designated facility, they shall be given not less than one and one-half (1 1/2) hours notification. In the event notification is less than one and one-half (1 1/2) hours, THC shall reimburse any additional cost the Employee incurs in traveling between their designated facility and the facility they are assigned to cover. The reimbursement costs must be outside of the Employees' normal travel and the Employee is responsible for following THC's reimbursement policy to request reimbursement.

Quijano Decl, Ex. 1, Article 7, Section 4.

> A. The Employer may allow Employees to attend, during normal working hours, approved workshops, seminars, conferences and training sessions, which are work-related. The following shall be paid by the Employer: fees for workshops, seminars, conferences, and training sessions, public transportation costs and/or mileage at the current IRS rate, parking costs and toll charges.
>
> B. In accordance with the current practice, any Employee who is approved for Employer initiated external training will continue to receive their regular wages for the time spent in the training.

Quijano Decl, Ex. 1, Article 14, Section 6, A, B.

> Some Tenderloin Housing Clinic (THC) employees may be required to use cellular phones based on the needs and requirements of their position.  Any employee required to have and use their personal cellular phone will be reimbursed at a standard rate. For positions that require the use of a personal cellular phone for phone calls, texts, and emails on a smart phone device, the employee shall receive up to a sixty nine dollar ($69.00) reimbursement per month. For positions that require the use of personal cellular phone for calls and texts only, the employee will receive up to a thirty six dollar ($36.00) reimbursement per month. The reimbursement will be included on the employee's first paycheck of the following month.

Quijano Decl, Ex. 1, Article 12, Section 4.

Plaintiff's expense reimbursement claim is preempted because resolving it would require substantial interpretation of the CBA. *See Linebarger v. Graphic Packaging Int'l, LLC*, No. SACV2000309JVSJDEX, 2020 WL 1934958, at *6 (C.D. Cal. Apr. 22, 2020) (holding that expense reimbursement claim was preempted under the second prong of the *Burnside* test because interpretation of expense reimbursement provision of CBA would be required to resolve expense reimbursement claim). For example, resolving Plaintiff's expense reimbursement claim would require interpretation of what work-related means regarding trainings, conferences, and workshops. *See* Quijano Decl., Ex. 1, Article 14, Section 6, A. It would also require interpretation of the employee's designated facility and notification. *See Id.*, Ex. 1, Article 7, Section 4. The CBA also provides that employees approved for external training will continue to receive their regular wages for the time spent in training. *See Id.*, Ex. 1, Article 14, Section 6, B. The meaning of regular wages requires interpretation under the CBA. Accordingly, Plaintiff's expense reimbursement claim is preempted under the second *Burnside* prong.

## IV. SUPPLEMENTAL JURISDICTION

35. Plaintiff's claims either depend upon, and/or require interpretation of, the collective bargaining agreements, and thus arise under Section 301. The alleged wage statement, waiting time, Labor Code § 204, and unfair and unlawful business practices act claims are all derivative of the underlying overtime, meal and rest break, and expense reimbursement claims. To the extent, however, that there are remaining claims for relief that are not completely preempted by Section 301, these claims are within the supplemental jurisdiction of this Court under 29 U.S.C. § 1367(a), in that they are so related to the Section 301 claims that they form part of the same case or controversy under Article III of the United States Constitution. In the alternative, any such other claims for relief are separate and independent claims which are properly removable to this Court pursuant to 28 U.S.C. §1441(c).

## V. VENUE

36. Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a) and 1441(a) because this Court's territorial jurisdiction includes San Francisco County, California, where the state court action was filed and is pending.

37. THC will serve written notice of the filing of this Notice of Removal on Plaintiff as required by 28 U.S.C. § 1446(d) and will file a Notice of Removal with the clerk of the Superior Court of California, County of San Francisco, as further required by that statute.

## VI. PRAYER FOR REMOVAL

38. WHEREFORE, THC respectfully requests that these proceedings, now pending in the Superior Court of the State of California in and for San Francisco County, be removed to this Court.

## VII. CONCLUSION

Defendant THC respectfully requests that this action be removed to this Court from the Superior Court of the State of California, County of San Francisco. Should the Court be inclined to remand this action, THC respectfully requests the Court first issue an order to show cause as to why the case should not be remanded, as an order remanding a case to state court is not reviewable. *See* 28 U.S.C. § 1447(d).

Dated: July 29, 2020               DAVIS WANG

 

By: _/s/ Shirley Wang_____
    Shirley C. Wang
    Attorneys for Defendant Tenderloin Housing Clinic, Inc.